UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Cynthia Netska,
    Plaintiff

    v.                                Case No. 22-cv-265-SM
                                       Opinion No. 2023 DNH 006

Hubbell, Inc.,
    Defendant


**O R D E R**


Cynthia Netska brings this action against the parent company (Hubbell, Inc.) of her former employer, alleging that she was the victim of unlawful gender-based discrimination, in violation of Title VII of the Civil Rights Act of 1964.  She also advances a claim under New Hampshire common law, asserting that she was wrongfully discharged from her job.  Hubbell moves to dismiss the latter claim, saying Netska's complaint fails to plausibly allege the essential elements of a viable cause of action.  See generally Fed. R. Civ. P. 12(b)(6).  For the reasons discussed, that motion is granted.


**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true,

disregarding legal labels and conclusions, and resolving
reasonable inferences in the plaintiff's favor.  See Galvin v.
U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017).  To avoid
dismissal, the complaint must allege sufficient facts to support
a plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009).  To satisfy the "plausibility standard," the
factual allegations in the complaint, along with reasonable
inferences drawn from those allegations, must show more than a
mere possibility of liability – that is, "a formulaic recitation
of the elements of a cause of action will not do."  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Lyman v.
Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) ("For the purposes
of our 12(b)(6) review, we isolate and ignore statements in the
complaint that simply offer legal labels and conclusions or
merely rehash cause-of-action elements.") (cleaned up).

     In other words, the complaint must include well-pled (i.e.,
non-conclusory, non-speculative) factual allegations as to each
of the essential elements of a viable claim which, if assumed to
be true, would allow the court to draw the reasonable and
plausible inference that the plaintiff is entitled to the relief
sought.  See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34,
38-39 (1st Cir. 2010).

**Background**

Accepting the complaint's factual allegations as true – as
the court must at this juncture – the relevant background is as
follows.  Cynthia Netska was employed as a "Human Resources
Business Partner" by Burndy LLC, a subsidiary of the defendant
Hubbell, Inc.  When the Director of Human Resources left the
company, Netska sought a promotion to that position.  She was
the only internal candidate to submit an application.  She was
not afforded the opportunity to formally interview for the
position, which was eventually filled by an external male
candidate with, at best, comparable qualifications for the job.

In March of 2021, before filling the vacant position, Kevin
Ryan (Vice President of Operations for Burndy) and Garth Warner
(Vice President of Human Resources for another Hubbell
subsidiary and the acting Director of Human Relations for Burndy
until that position was filled) were on a telephone conference
call with more than 65 employees, including Netska.  Both men
answered questions regarding the "unsuccessful and
disappointing" search for a qualified human resources director,
Complaint (document no. 1) at para. 40, and both men commented
that there had been "no good internal candidates" for the
position, id.  Ryan's comments singled out Netska as the sole

3

internal candidate.  Id. at para. 42.  According to the
complaint,

> Peers of Netska immediately responded to the harmful
> accusations by both Ryan and Warner and, knowing that
> Netska had applied for the position, expressed how
> horrified they were at what they had just heard.
>
> Netska followed up with an email to Warner stating how
> embarrassed, disrespected, and distraught she had felt
> after being humiliated by him and Ryan in front of her
> peers with whom she had worked so hard to earn their
> respect.

Id. at paras. 43-44.


    Roughly three months later, in June of 2021, the company
hired a man as its new Director of Human Resources.  According
to Netska, he was hired at one level above that at which the
position had been posted and he was offered a significantly
higher salary, a higher bonus, and greater long-term incentives
than had been posted.  As mentioned, Netska was not afforded the
opportunity to interview for the vacant position (though she did
have several informal conversations with various corporate
officers about her interest in, and qualifications for, the
vacant human resources position).


    On July 23, 2021, approximately four months after the
conference call on which Netska was embarrassed by company

officials, and about one month after the company filled the
vacant human resources position with another candidate, Netska
announced her resignation from the company.  According to the
complaint, Netska was "feeling completely unsupported in her
current role and [had heard] nothing of the alleged growth
opportunities" the company allegedly promised to provide to her.
Complaint at para. 50.  Those adverse working conditions, says
Netska, compelled her to resign and they form the basis of her
wrongful discharge claim.

## Discussion

Under New Hampshire common law, to prevail on a claim for
wrongful discharge, a plaintiff must establish three essential
elements:

    (1)   that her employment was terminated; and

    (2)   that the termination of her employment was
           motivated by bad faith, retaliation, or malice;
           and

    (3)   that her employment was terminated because she
           performed an act that public policy would
           encourage or because she refused to do something
           that public policy would condemn.

See Karch v. BayBank FSB, 147 N.H. 525, 536 (2002).  Here, of
course, Netska's employment was not terminated.  She resigned.
But, says Netska, she was compelled to do so by intolerable

working conditions and was, therefore, "constructively discharged."

    A.   Element One of Wrongful Discharge: Termination.

To be sure, constructive discharge can satisfy the "termination" element of a wrongful discharge claim.  See Karch, 147 N.H. at 536.  But, to prove that element, Netska must establish that Hubbell's actions rendered her working conditions "so difficult and intolerable that a reasonable person would feel forced to resign."  Id.  As the New Hampshire Supreme Court has noted, "constructive discharge is not established by showing relatively minor abuse of an employee.  Rather, the adverse working conditions must generally be ongoing, repetitive, pervasive, and severe."  Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 249 (2006) (citation and internal punctuation omitted) (emphasis supplied).  It is a high threshold.  See, e.g., Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000) ("The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins - thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world.  Thus, the constructive discharge standard, properly applied, does not guarantee a workplace free from the usual ebb and flow of power relations and inter-office politics.").

Even liberally construed, the factual allegations in Netska's complaint do not meet that high threshold.  According to the complaint,

> After not being given a chance to even go through the interview process and being humiliated by the executives on a department-wide call, Netska knew that her credibility within Hubbell had been undermined and that she had no future or growth opportunities with the company.  That realization forced her to look for new work.

Memorandum in Opposition (document no. 10) at 4 (emphasis supplied).  Netska asserts that the foregoing factual allegations – humiliation, loss of credibility, and perceived lack of opportunity - "meet the standard for constructive discharge."  Id.  The court disagrees.

While Netska plainly considered Hubbell's response to her application for the vacant human resources position to have been inappropriate, demeaning, and personally embarrassing, she has failed to allege facts sufficient to warrant the conclusion that the conditions of her employment were so intolerable, so severe, and so pervasive that a person of ordinary firmness would have seen no plausible alternative except to resign.  See Gallagher v. Unitil Serv. Corp., 2015 DNH 179, 2015 WL 5521794, at *7 (D.N.H. Sept. 17, 2015).  See generally Posteraro v. RBS Citizens, N.A., 159 F. Supp. 3d 277, 291 (D.N.H. 2016) (noting

that a plaintiff must rely upon objective facts, not subjective
concerns or beliefs, to support a viable wrongful discharge
claim).  Pointing to one incident during which she was
humiliated and/or embarrassed by management is simply
insufficient.  Nor is it sufficient to vaguely assert a "loss of
credibility" or "lack of growth opportunities" without alleging
actual examples that support such subjective beliefs.  At least
as alleged in her complaint, the facts upon which Netska bases
her claim are quintessentially those described by the court of
appeals as "the usual ebb and flow of power relations and inter-
office politics" that employees "routinely encounter in a hard,
cold world."  Suarez, 229 F.3d at 54.  While Netska was well
within her rights to seek other employment under the
circumstances described, her decision was not one forced upon
her by intolerable or severe working conditions that reasonable
people of ordinary firmness would not abide.


     Parenthetically, the court notes that the plaintiff in a
wrongful termination action must typically identify current
conditions of employment that are intolerable, severe, and
pervasive.  It is insufficient for a plaintiff to rely upon
speculative assumptions about potential future conditions of
employment.  See generally Posteraro, 159 F. Supp. 3d at 277.
Here, Netska seems to rely upon such speculation regarding her

future conditions of employment, alleging that her credibility

had been undermined and she "had no future or growth

opportunities."  Memorandum in Opposition at 4.  But, the

complaint points to no actual events illustrating Netska's

alleged loss of credibility or its effect on her then-present

working environment, nor does it identify any specific lost

growth opportunities.  See, e.g., Complaint at para. 44 ("[After

the teleconference,] Netska followed up with an email to Warner

stating how embarrassed, disrespected, and distraught she had

felt after being humiliated by him and Ryan in front of her

peers, peers with whom she had worked so hard to earn their

respect.  It was at this point that Netska felt so dismissed,

belittled, humiliated, and disrespected by leadership that she

began to look for alternative work opportunities.") (emphasis

supplied).  In other words, Netska seems to concede that she

decided to leave the company almost immediately after the

telephone conference during which she was embarrassed, rather

than wait to see how the conditions of her employment would be

affected going forward and then try to address with her employer

any that she felt were intolerable – conduct that is typically

required of a plaintiff in her situation.  See generally Gerald

v. Univ. of Puerto Rico, 707 F.3d 7, 25 (1st Cir. 2013)

("Constructive discharge typically refers to harassment so

severe and oppressive that staying on the job while seeking

redress - the rule save in exceptional cases - is so intolerable
that a reasonable person would have felt compelled to resign.
. . . The standard to meet is an objective one, it cannot be
triggered solely by an employee's subjective beliefs, no matter
how sincerely held.") (citations and internal punctuation
omitted) (emphasis supplied).

       In light of the foregoing, Netska's complaint fails to
plausibly allege the first element of her wrongful termination
claim: that she was constructively discharged.  While Netska's
subjective impression that she had been improperly overlooked
for a promotion she deserved, or her concern that the company no
longer provided growth opportunities for her, were certainly
sufficient reasons for her to consider a change of employment,
those circumstances were not legally sufficient to establish
that her voluntary resignation amounted to a constructive
discharge.

       B.   Element Three: Retaliation and Public Policy.
       Netska's wrongful termination claim also fails for another
reason: her complaint does not allege sufficient facts to
plausibly warrant the conclusion that the (constructive)
termination of her employment was causally related to her having
performed an act that public policy would encourage or her

having refused to do something that public policy would condemn.
In other words, the complaint does not allege facts suggesting
that Hubbell imposed intolerably difficult working conditions
upon her <u>in retaliation for</u> her having engaged in laudatory
conduct that is supported by New Hampshire public policy.

On this particular point, Netska's argument is somewhat
confusing, but it appears to be this: Hubbell retaliated against
her in response to her having expressed interest in the
promotion to human resources director.  And, says Netska, it is
at least conceivable that "applying for a promotion is an act
that public policy would encourage."  Memorandum in Opposition
(document no. 10) at 5.  Netska's entire argument on this
"public policy" element is as follows:

> Hubbell argues that Netska also fails to meet the
> third prong of a wrongful termination claim because
> "applying for an internal promotion is not protected
> by public policy."  However, Hubbell cites no case law
> that says that, and undersigned counsel has found no
> case law that opines one way or the other.  Hubbell
> only cites a statement of New Hampshire common law
> that "[p]ublic policy does not protect an employee's
> expression of disagreement with a management
> decision."  That statement of law does not foreclose
> the idea that applying for a promotion is "an act that
> public policy would encourage."

<u>Id</u>.  at 4-5 (citations omitted).

According to Netska, it is (at least arguably) against New Hampshire public policy for an employer to (constructively) fire an employee for having applied for a promotion.  But, as she acknowledges, she can cite no precedent to support that assertion.  Instead, she says it is "an open question of law whether applying for an internal promotion is protected by public policy."  Memorandum in Opposition at 4.  Simply positing that it is conceivable that some undefined public policy goal is promoted by encouraging employees to seek promotions is insufficient.  At a minimum, Netska must articulate the precise public policy she believes would be advanced by affording protection to employees who seek a promotion and identify the source of that policy.  See generally Leeds v. BAE Sys., 165 N.H. 376, 379 (2013) (noting that the public policy contravened by the wrongful discharge can be based on statutory or nonstatutory policy); Cilley v. New Hampshire Ball Bearings, Inc., 128 N.H. 401, 405-06 (1986) (same).

Moreover, even assuming New Hampshire's public policy does encourage employees to seek promotions, the complaint fails to plausibly allege a causal connection between Netska's application for the vacant position and what she claims were intolerable working conditions.  That is, she has not adequately alleged that her employer retaliated against her in some

unacceptable way because she sought the promotion.  What is alleged in the complaint is that she sought the promotion, but her employer did not consider her qualified for the job and inappropriately made those conclusions public, in a way that hurt and embarrassed Netska.

In short, Netska's complaint fails to plausibly allege that intolerable conditions of employment were imposed upon her in retaliation for her having engaged in conduct encouraged by public policy.  Of course, if the decision not to promote Netska was animated by some improper discriminatory animus (say, gender bias), her remedy lies in the claim she advances under Title VII.  See generally Faulkner v. Dartmouth Hitchcock Med. Ctr., 2015 WL 4759425, at *8, 2015 DNH 157 (D.N.H. Aug. 12, 2015) (noting that "a common law claim for wrongful termination focuses on conduct in which the plaintiff engaged (or refused to engage), and not on age, ethnicity, or physical or mental impairments") (emphasis in original); Parker v. MVM, Inc., 2006 WL 1724359 *2–3, 2006 DNH 70 (D.N.H. 2006) ("The common law cause of action for wrongful discharge is not the proper means by which to remedy a discharge that was motivated by someone's status or physical condition.  Instead, that cause of action is properly invoked only when an employee is discharged in response

to his or her having engaged in a narrow category of conduct.")
(citation omitted).

In the absence of any precedent supporting plaintiff's
theory of liability, the lack of any developed argument
explaining how her decision to apply for a promotion implicates
New Hampshire public policy, and the dearth of factual
allegations pointing to a causal connection between her conduct
and the allegedly intolerable conditions of her employment, the
court is constrained to conclude that a properly instructed jury
could not plausibly rule in favor of Netska on the third element
of a wrongful termination claim.  That is to say, she cannot
demonstrate that the allegedly intolerable conditions of her
employment were imposed upon her in retaliation for having
engaged in conduct encouraged by New Hampshire public policy.

### Conclusion

For the foregoing reasons, as well as those set forth in
defendant's memoranda in support of its motion to dismiss
(documents no. 8-1 and 11), the court concludes that Netska's
complaint fails to plausibly allege the essential elements of a
viable claim that she was wrongfully terminated.  As to the
first element – that her employment was actually terminated –
the complaint does not allege sufficient facts to warrant the

conclusion that she was "constructively discharged."  The
complaint also fails to plausibly allege the third element of
such a claim: that Netska's alleged termination was in response
to, or in retaliation for, her having engaged in conduct that
public policy seeks to promote.

Because Netska's complaint fails to plausibly allege two of
the essential elements of a viable common law claim for wrongful
termination defendant's Motion to Dismiss Count II of
plaintiff's complaint (**document no. 8**) is necessarily granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 17, 2023

cc:  Counsel of Record